UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HOMES BY DERAMO, INC.,

             Plaintiff,
v.                     Case No. 8:08-cv-2528-T-33MAP

MID-CONTINENT CASUALTY COMPANY,

             Defendant.
_____/

**ORDER**

This cause is before the Court pursuant to Defendant Mid-Continent's Motion to Dismiss (the "Motion to Dismiss" Doc. # 7), filed on March 13, 2009. Plaintiff, Homes By Deramo, Inc. (hereafter, "Deramo") filed a Response in Opposition to the Motion to Dismiss on March 20, 2009. (Doc. # 9). For the reasons that follow, the Court will deny the Motion to Dismiss.

**I.**    **Factual Background and Procedural History**

Deramo built a custom home for the Vidolin family in Osprey, Florida (the "Home"). (Doc. # 2 at ¶ 4). The Vidolins owed Deramo money for the construction of the Home, and Deramo filed suit against the Vidolins in Sarasota County Court in Case No. 2006-CA-000106 NC in an effort to collect the funds. (Doc. # 2 at ¶ 4). On May 18, 2006, the Vidolins filed a

1

counterclaim against Deramo alleging construction defects involving, among other things, the decks on the Home (the "Vidolin Counterclaim"). (Doc. # 2-2). Deramo alleges that the deck work was performed by Deramo's subcontractors. (Doc. # 2 at ¶ 7).

Mid-Continent insured Deramo against certain risks pursuant to a written policy of insurance (the "Policy"). The Policy is a "Standard Form Commercial General Liability Policy with Completed Products Operations Hazard Coverage." (Doc. # 1 at ¶ 8). Upon receipt of the Vidolin Counterclaim, Deramo demanded that Mid-Continent provide insurance coverage as well as a defense. (Doc. # 2 at ¶ 9). Mid-Continent denied coverage and declined to defend Deramo against the Vidolin Counterclaim. (Doc. # 2 at ¶ 10). Thereafter, the Vidolins supplied Deramo with an expert report describing the damage. (Doc. # 2 at ¶ 11). Upon receipt of the expert report, Deramo again demanded coverage from Mid-Continent, and Mid-Continent again denied coverage. (Doc. # 2 at ¶ 11).

On August 21, 2008, Deramo filed suit against Mid-Continent in state court, alleging breach of contract due to failure to provide insurance coverage (count one) and seeking a declaratory judgment concerning insurance coverage (count two). (Doc. # 1 at ¶ 2). Among other things, Deramo attached

2

to its complaint the Policy and the Vidolin Counterclaim.

On September 22, 2008, Mid-Continent removed the state court action to this Court. (Doc. # 1 at ¶ 3). On November 3, 2008, the Honorable Steven D. Merryday, United States District Judge, remanded the case to state court on the ground that Mid-Continent failed to establish subject matter jurisdiction by a preponderance of the evidence. (Doc. # 1 at ¶ 6). Specifically, Judge Merryday determined that the Court did not have sufficient evidence to determine that the amount in controversy exceeded $75,000 to satisfy the requirements of 28 U.S.C. § 1332. (Doc. # 1 at ¶ 6).

The parties conducted discovery, retained experts, and conducted inspections of the allegedly defective deck work; and the parties appear to be in agreement that the amount in controversy exceeds $75,000. (Doc. # 1 at ¶ 10). Mid-Continent explains in the notice of removal, "The proposals that Homes by Deramo produced in response to the RFP [request for production] totaled approximately $350,000 for costs to repair or replace the defects in the Vidolins' home." (Doc. # 1 at 4).

On December 19, 2008, Mid-Continent once again removed the case to this Court. (Doc. # 1). Thereafter, on March 13, 2009, Mid-Continent filed the Motion to Dismiss. In the

Motion to Dismiss, Mid-Continent asserts that Deramo's complaint should be dismissed because (1) the deck damage does not fall under the Policy; and (2) the deck damage is excluded by "Exclusion 1 – Damage to Your Work" as enumerated in the Policy.

**II. Legal Standard**

On a motion to dismiss, this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990) ("On a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true.")

However, the Supreme Court explains that:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(internal citations omitted). Further, courts are not "bound to accept

4

as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

**III. Analysis**

In this diversity case, the Court applies the substantive law of the forum state unless federal constitutional or statutory law compels a contrary result. Tech. Coating Apps., Inc. v. United States Fid. & Guar. Co., 157 F.3d 843, 844 (11th Cir. 1998). Furthermore, this Court must apply Florida law in the same manner that the Florida Supreme Court would apply it. Brown v. Nicholas, 8 F.3d 770, 773 (11th Cir. 1993). In the present case, Florida insurance law governs the issues before the Court.

Under Florida law, the interpretation of an insurance contract is a matter of law to be decided by the court. Gas Kwick, Inc. v. United Pac. Inc. Co., 58 F.3d 1536, 1539 (11th Cir. 1995).

**A. The Policy**

The Court will examine the Policy in order to address the parties' contentions concerning coverage, including the duty to defend. The Policy provides in pertinent part:

**Section I - Coverages**
**Coverage of Bodily Injury and Property Damage Liability**
    **1. Insuring Agreement**
        a. We will pay those sums that the insured becomes legally obligated to pay as damages

because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or suit that may result. But:
(1) The amount we will pay for damages is limited as described in Section III- Limits Of Insurance; and
(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.
No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments Coverages A and B.
b. This insurance applies to "bodily injury" and "property damage" only if:
(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
(2) The "bodily injury" or "property damage" occurs during the policy period; and
(3) Prior to the policy period, no insured listed under Paragraph 1. of Section II - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part . . .

2. **Exclusions**
This insurance does not apply to: . . . .
1. **Damage to Your Work**
"Property damage" to "your work" arising all of it or any part of it and included in the "products-competed operations hazard".
This exclusion does not apply if the damaged work or the work out of which the damage

arises was performed on your behalf by a
                    subcontractor. . . .
         **Section V- Definitions**
         17.   "Property Damage" means:
               a.   Physical injury to tangible property,
                    including all resulting loss of use of that
                    property. All such loss of use shall be
                    deemed to occur at the time of the physical
                    injury that caused it; or
               b.   Loss of use of tangible property that is not
                    physically injured. All such loss of use
                    shall be deemed to occur at the time of the
                    "occurrence" that caused it. . . .
         22.   "Your work":
               a.   Means:
               (1)  Work or operations performed by you or on your
                    behalf; and
               (2)  Materials, parts or equipment furnished in
                    connection with such work or operations.
               b.   Includes:
               (1)  Warranties or representations made at any time
                    with respect to the fitness, quality,
                    durability, performance or use of "your work;"
                    and
               (2)  The providing of or failure to provide
                    warnings or instructions.

(Doc. # 2-2).

   **B.   <u>Coverage</u>**

   Mid-Continent contends that it is not obligated to provide insurance coverage or a defense to its client, Deramo, because the deck damage to the Home is not covered under the Policy. Specifically, Mid-Continent contends that the damage to the Home does not qualify as "Property Damage" under the Policy. In addition, Mid-Continent argues that the damage to the Home falls under the "Your Work" exclusion to the Policy.

The Court will begin its analysis with reference to United States Fire Insurance Co. v. J.S.U.B., Inc., 979 So. 2d 871 (Fla. 2007). There, the Florida Supreme Court addressed a coverage dispute akin to the dispute before this Court. The J.S.U.B. Court remarked:

> Our interpretation of insurance contracts, such as the CGL [Commercial General Liability] policies in this case, is governed by generally accepted rules of construction. Insurance contracts are construed according to their plain meaning, with any ambiguities construed against the insurer and in favor of coverage. Further, in construing insurance policies, courts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect. Accordingly, although exclusionary clauses cannot be relied upon to create coverage, principles governing the construction of insurance contracts dictate that when construing an insurance policy to determine coverage the pertinent provisions should be read *in pari materia.*

Id. at 877 (internal citations and quotation marks omitted).

1. **Property Damage**

Among other things, the Vidolin Counterclaim asserts that Deramo failed to "properly perform the Work associated with the parties' agreement, for example, failing to properly construct and install the exterior tile and porches . . . . Damages include, or will include, the costs associated with investigating and repairing or replacing [Deramo's] defective and nonconforming Work." (Doc. # 2-2 at ¶¶ 38, 40). Mid-

Continent asserts that the Vidolin Counterclaim does not state a claim for "property damage" under the Policy and Florida law. Mid-Continent draws the Court's attention to the fine distinction between "faulty workmanship" (that does not constitute "property damage" under Florida law) and "defective work" (that does constitute "property damage" under Florida law).

To understand this distinction, this Court draws upon the J.S.U.B. case. There, after a contractor completed several homes, it was discovered that certain subcontractors improperly compacted soil, and the homes' foundations and drywall were damaged as a result. 979 So. 2d at 875. The contractor repaired the homes and filed a declaratory action against his insurer in state court seeking insurance coverage for the cost of the repair of the homes. Id. at 876. The trial court ruled in favor of the insurance company. Id.

The Second District Court of Appeal reversed, finding that the relevant insurance policies contained "broad policy language" that provided coverage to the contractor and that none of the exclusions applied. Id. The Florida Supreme Court considered the case because the Fourth District Court of Appeal, construing a similar insurance policy, came to the opposite conclusion on the coverage issue. Id. The Florida

9

Supreme Court considered the conflict between the District Courts of Appeal and found that faulty workmanship of a subcontractor was neither intended nor expected from the contractor's standpoint and that such faulty workmanship was an "occurrence" under a standard CGL insurance policy (even with the "your work" exclusion in the policy). Id. at 874.

The Court further explained:

> This case does not involve a claim for the cost of repairing the subcontractor's defective work, but rather, a claim for repairing the structural damage to the completed homes caused by the subcontractor's defective work. Specifically, it was the subsequent soil settlement due to the subcontractor's faulty workmanship that caused the structural damage to the homes. Because there was "physical injury to tangible property," we conclude that the structural damage to the homes is "property damage" within the meaning of the policies.

J.S.U.B., 979 So. 2d at 890. Thus, the Court found in favor of the contractor and against the insurance company.

In response to the Motion to Dismiss, Deramo draws many factual parallels between the present case and the J.S.U.B. case:

> Homes by Deramo, Inc. did not intend or expect the framing subcontractor to install the decks without the proper slope or the flashing and stucco to be improperly installed. Therefore coverage exists. The Vidolins are not complaining about purely aesthetic products that were defectively installed. Their complaint is that the decks are leaking water, are dangerous and have to be removed and

> rebuilt, which will cost in excess of $100,000.00. This is a claim for 'property damage' [as in J.S.U.B.] and is not excluded because it was performed by subcontractors.

(Doc. # 9 at 7).

Mid-Continent, on the other hand, draws upon Auto-Owners Ins. Co. v. Pozzi Window Co., 984 So. 2d 1241 (Fla. 2008). There, a homeowner sued a window retailer (Pozzi), a builder, and a subcontractor after water began to intrude around the windows of his newly-constructed multi-million-dollar home. Id. at 1243. The window retailer settled with the homeowner as well as with the builder and then sued the builder's insurer as its assignee, alleging breach of good faith due to the denial of the claim. Id. at 1243-44.

The insurer denied the allegations of defective installation as well as installation damage requiring window replacement, and the insurer sought a judicial determination as to its duty to defend. Id. at 1244. The insurer claimed that the installation was excluded under the insurance policy. Id.

In Auto-Owners, the Florida Supreme Court answered a certified question posed by the Eleventh Circuit: "Does a Standard Form Commercial General Liability Policy with Products Completed Operations Hazard Coverage, issued to a

general contractor, cover the general contractor's liability to a third party for the costs of repair or replacement of defective work by its subcontractor?" Pozzi Window Co. v. Auto-Owners, Ins., 446 F.3d 1178 (11th Cir. 2006).

The Florida Supreme Court held that the answer to the certified question was dependent upon whether the windows themselves were defective or whether they were not defective, but rather, were installed in a defective manner. Auto-Owners, 984 So. 2d at 1243.

The Florida Supreme Court explained that "there is a difference between a claim for the costs of repairing or removing defective work, which is not a claim for 'property damage,' and a claim for the cost of repairing damage caused by the defective work, which is a claim for 'property damage.'" Id. at 1248 (citing J.S.U.B., 979 So. 2d at 889). The Court clarified, "the mere inclusion of a defective component, such as a defective window or the defective installation of a window, does not constitute property damage unless that defective component results in physical injury to some other tangible property." Auto-Owners, 984 So. 2d at 1248. The Florida Supreme Court returned the case to the Eleventh Circuit to determine the factual issue as to whether the term "defective work" was limited to the faulty

installation of the windows or whether the windows were defective.

Thus, this Court must determine whether the deck work constitutes "property damage." On this point, Mid-Continent directs the Court's attention to the Vidolin Counterclaim against Deramo, which is the Court's guidepost for determining Mid-Continent's duty to defend. See <u>Higgins v. State Farm Fire & Cas. Co.</u>, 894 So. 2d 5, 9 (Fla. 2004)(the insurer's duty to defend is determined by comparing the allegations of the underlying complaint to the policy); <u>James River Ins. Co. v. Ground Down Eng'g, Inc.</u>, 540 F.3d 1270, 1275 (11th Cir. 2008)("the duty to defend depends solely on the facts and legal theories alleged in the pleadings and claims against the insured"). Mid-Continent points out that the Vidolin Counterclaim does not allege that the home was damaged by the defective decks. (Doc. # 2-2).

Mid-Continent suggests that the Court should end its analysis at this point and find that Mid-Continent owes no duties to Deramo on the basis of the nonspecific allegations found in the Vidolin Counterclaim.

Mid-Continent supplies the Court with several cases warning of the perils associated with examining facts extraneous to the underlying complaint in an insurance

13

coverage action.  For example, in National Union Fire Ins. Co. v. Lennox Liquors, Inc., 358 So. 2d 533 (Fla. 1977), the Court generally held that "the allegations of the complaint govern the duty of the insured to defend."  There, an insurer refused to defend or indemnify a liquor store when its proprietor shot a minor that he mistakenly thought was about to rob the store. Id. at 533.

When the store called upon its insurer to defend, the insurer refused, contending that, because the injured minor's complaint alleged that the store's proprietor intentionally harmed him, the conduct was outside of the insurance policy. Id.

After a lengthy discussion, the Florida Supreme Court ruled in favor of the insurer: "the allegations of the complaint govern the duty of the insurer to defend.  The original complaint filed by [the minor] did not allege facts which would bring the cause within the coverage of the insurance policy since the only cause of action alleged was one for intentional acts by [the store proprietor]." Id. at 536.

It appears on the surface that the defective decks, characterized in the Vidolin Counterclaim as "porches" constitute defective work, which would fall under the

14

definition of "property damage" under the Policy and Florida law. However, before making an outcome-determinative finding, the Court requires further briefing and a more developed record. As will be discussed later in this Order, the Court determines that the issues raised in the Motion to Dismiss would be better addressed in a Motion for Summary Judgment.

### 2. **"Your Work" and Subcontractors**

Mid-Continent asserts that this Court would also be justified in dismissing this suit under the "your work" exception to the Policy. Mid-Continent explains:

> The rule is well-settled in Florida that commercial general liability insurance polices do not insure against liability which was incurred as a result of a contractor's failure to perform its work in accordance with the contractor's express or implied promise to do so in a workmanlike manner or according to the terms of the agreement. To the contrary, insurance coverage for these claims is expressly and unambiguously excluded by the "your work" exclusion.

(Doc. # 7 at 9).

Mid-Continent reminds the Court that there is no mention of a subcontractor in the Vidolin Counterclaim against Deramo. However, Mid-Continent candidly admits that the "your work" exclusion "does not apply if the work was performed by subcontractors on behalf of the insured." (Doc. # 7 at 10).

In response to the Motion to Dismiss, Deramo asserts that

15

the "true facts" of the case - that subcontractors installed the deck work - brings this case out of the realm of the "your work" policy exclusion and into the realm of coverage. Deramo relies upon the holding in Hagan v. Aetna Cas., 675 So. 2d 963 (Fla. 5th DCA 1996):

> The rule is well established that where the complaint alleges facts that clearly do not fall within the policy liability coverage provisions and the insurer nevertheless assumes the defense of the action, the insurer may conduct an investigation and, upon determining the true facts and concluding no coverage exists, may withdraw its defense of the action against the insured without having waived its rights and defenses as to coverage. <u>Similarly, where the original complaint fails to allege facts within the policy coverage, if it later becomes apparent from an amended pleading that claims not originally within the scope of the pleadings are being made which are within the insurance coverage, the insurance carrier, upon notification, would become obligated to defend</u>.

Id. at 968 (emphasis added). However, there is no "amended pleading" in the present case. Deramo explains that it asked the Vidolins to amend the Counterclaim to state that subcontractors completed the deck work, and the Vidolins refused. Deramo contends that it should not be "handcuffed and at the mercy of the claimant [the Vidolins] as to how the claimant words the [Counterclaim]." (Doc. # 9 at 5).

Deramo indicates that this Court is permitted to make factual findings, including the finding that subcontractors

completed the deck work on the Home, pursuant to Florida's declaratory judgment statute, Florida Statute Section 86.011. The Florida Supreme Court in <u>Higgins</u>, interpreting the declaratory judgment statute, held that an insurer's obligation to defend a claim against its insured must be determined from the allegations in the underlying complaint, <u>except</u> that, when the insurer argues that it has no duty to defend based on factual issues that would not normally be alleged in the underlying complaint, courts may entertain a declaratory action seeking a determination of a factual issue upon which the insurer's duty to defend depends. 894 So. 2d at 10 (emphasis added).

The Court has carefully examined the parties' submissions and the relevant case law. Deramo argues that the Court must analyze factors outside of the complaint and make factual determinations. For instance, Deramo contends that this Court must review the Vidolin's voluminous expert report prior to determining whether coverage exists. (Doc. # 9 at 3). Furthermore, Deramo attached numerous documents to its Response in Opposition to the Motion to Dismiss.

This Court is not inclined to evaluate facts outside of the four corners of the complaint when considering a motion to dismiss. The Court recognizes that it may consider documents

attached to or otherwise referenced in the complaint without converting the matter into a motion for summary judgment; however, to do so, the Court must first find that such documents are central to the dispute and also that such documents are uncontested. Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005).

The Court is unable to make these determinations on the present record. Upon due consideration, the Court needs more information to determine whether coverage exists. However, such review should come at the summary judgment stage, not the motion to dismiss stage. The Court will review the entire file, particularly the pleadings in the underlying case, upon the filing of a motion for summary judgment.

Accordingly, it is

**ORDERED, ADJUDGED, and DECREED:**

Defendant Mid-Continent's Motion to Dismiss (Doc. # 7) is **DENIED**.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this <u>14th</u> day of September, 2009.

/s/ Virginia M. Hernandez Covington
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record